UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SMITH,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DR. JOHAL, et al.,<br><br>　　　　　Defendants. | CASE No. 1:15-cv-01662-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF NO. 19)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 5.)

The Court dismissed Plaintiff's complaint and first amended complaint for failure to state a claim, but gave leave to amend. (ECF Nos. 9, 17.) Plaintiff's second amended complaint is before the Court for screening.

**I.　SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated at the Correctional Training Facility but complains of acts that occurred at Wasco State Prison. He names the following defendants in their individual capacities: (1) A. Johal, M.D., (2) Chief Physician A. Klang, (3) Chief Medical Executive A. Youssef, M.D., (4) Dr. Zepp.

Plaintiff's allegations may be summarized essentially as follows.

On October 28, 2014, Plaintiff submitted a Health Care Services Request Form complaining of pain in his right shoulder and limited movement after exercising. On October 31, 2014, he was examined by Defendant Johal. Plaintiff advised Johal of his complaints. Johal prescribed Naproxen for pain and ordered Plaintiff reassigned to a lower bunk and light duty work for three months.

On December 2, 2014, Plaintiff again was examined by Johal. Plaintiff complained of continued pain and inadequacy of the medication. Johal expressed disbelief that Plaintiff's injury was causing so much pain and speculated that Plaintiff was merely seeking morphine. She stated, "All you Blacks are drug addicts." She threatened to activate her security alarm if Plaintiff did not leave. Plaintiff left.

At some point during this time period, Defendant Johal told Plaintiff that he would be scheduled for an MRI.

On December 5, 2014, Plaintiff sent a request for interview to Defendant Klang requesting intervention in Plaintiff's medical concerns. Plaintiff advised Klang that Johal and Zepp had refused him adequate medication, and also advised Klang of Johal's derogatory statements. He advised Klang that Johal and Zepp allowed Plaintiff's prescription to expire and refused to renew it. Klang did not respond.

On December 22, 2014, Plaintiff sent Defendant Youssef an inmate request form complaining that Klang had not responded to the request for interview. Plaintiff relayed that Johal and Zepp had refused him morphine and that his medication was inadequate. He requested an MRI and that Pain Management review his medication. Youssef did not respond.

On January 21, 2015, Plaintiff filed an administrative appeal. Plaintiff complained that Defendants Johal and Zepp did not adequately treat his torn rotator cuff and resulting pain. He requested the MRI that Johal had promised, effective pain medication, and to be placed on a waiting list for surgery.

On January 22, 2015, Plaintiff received an MRI. He was told that results would be available in two weeks.

On February 4, 2015, Defendant Johal interviewed Plaintiff in relation to his appeal. Plaintiff expressed his continued pain and his desire for morphine. Johal refused morphine. She refused Plaintiff surgery, stating that it was because he had filed an administrative appeal. She referred Plaintiff for an orthopedic consultation.

On February 23, 2015, Defendant Klang granted Plaintiff's appeal in part. Plaintiff's request for MRI was granted. His request to be referred to a general surgeon was denied. His request for morphine was denied. His appointment for an orthopedic consultation was approved and the appointment was pending.

At some point, Plaintiff was prescribed Tylenol #3 for pain.

On March 5, 2015, Plaintiff submitted his appeal to the second level. He complained of Johal's indifference and that Tylenol #3 was inadequate. He requested surgery.

Defendant Youssef denied Plaintiff's appeal at the second level. He stated, "Morphine cannot be prescribed based on current CCHCS guidelines. Your current recommended therapy is within current community standards." According to Plaintiff, this is a reference to the California Prison Health Care Services pain management guidelines. Plaintiff claims he was eligible for morphine under the guidelines. (The portion of the guidelines he quotes do not appear to support this assertion.)

On May 26, 2015, Plaintiff was seen by non-party Dr. Paik. Dr. Paik recommended surgery.

On June 2, 2015, Defendants Johal and Zepp "allowed" Plaintiff's pain medication to expire and refused to renew it. Plaintiff was without medication for the eight days leading up to his surgery.

On June 10, 2015, Plaintiff underwent surgery and was returned to the prison. Plaintiff claims that the delay in his treatment resulted in further unspecified injury to his shoulder and unnecessary pain.

On June 11, 2015, Defendant Johal denied Plaintiff's request for a temporary lay-in, which would have confined him to his living quarters and relieved him of his work duty. Johal also denied Plaintiff's request for light duty, and a lower bunk assignment. Defendants Johal and Zepp typically provide other inmates with similar injuries such accommodations.

Plaintiff informed Johal that his work supervisor was requiring him to perform full duty or face a serious rules violation report. Johal then approved light-duty, a lay-in, and a lower bunk accommodation.

From June 10, 2015 to August 6, 2015, Plaintiff did not receive physical therapy as ordered by his doctor. Defendants Johal and Zepp failed to follow up on why Plaintiff was not receiving therapy.

Records attached to Plaintiff's complaint reflect that he received morphine for three days following surgery. From June 13, 2015 to June 16, 2015, Plaintiff was without pain medication. Plaintiff states that Defendants Johal and Zepp refused to renew his medication. Plaintiff believes this was in retaliation for him having filed administrative appeals. (Records attached to Plaintiff's complaint reflect that, on June 17, 2015, he was prescribed a thirty day course of methadone pain.)

On June 17, 2015, Plaintiff saw Dr. Paik. Paik changed Plaintiff's bandage and recommended pain medication and urgent physical therapy. These recommendations were relayed to Defendant Youssef.

On June 22, 2015, Plaintiff saw Dr. Paik who again recommended urgent physical therapy. Paid advised Plaintiff that he suffered major cartilage damage between his right

5

shoulder joints. Plaintiff attributes the damage to the treatment deficiencies by Johal, Zepp, Klang, and Youssef.

On June 24, 2015, the physical therapist at Plaintiff's institution quit working and/or quit providing therapy to patients as recommended by Defendant Youssef.

On July 8, 2015, Plaintiff submitted a health care services request form to Defendant Zepp. He complained of pain and stiffness and lack of physical therapy.

On July 30, 2015, and August 5, 2015, Plaintiff's physical therapy sessions were cancelled.

On August 10, 2015, Plaintiff saw Dr. Paik. Upon return to the prison, he saw Defendant Zepp. Zepp renewed Plaintiff's medication and recommended physical therapy. Plaintiff advised Zepp that Tylenol #3 was not working and he was in severe pain. On this date, Plaintiff underwent his first physical therapy session.

Thereafter, several physical therapy sessions were cancelled. Defendant Youssef refused to allow Plaintiff to take a therapy band to his cell to perform therapy. According to Plaintiff, therapy bands are permitted at other institutions.

On August 31, 2015, Plaintiff saw Dr. Paik. Paik assured Plaintiff he would advise Youssef of the need for therapy to avoid further surgery.

As a result of the lack of therapy, Plaintiff had poor healing. He believes all of the defendants retaliated against him for filing his January 21, 2015 grievance against Johal.

Plaintiff claims violation of his First and Eighth Amendment rights. He seeks monetary relief and a declaratory judgment.

## IV.  ANALYSIS

### A.  Medical Indifference

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires (1) a serious medical need, and (2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met

6

by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060a; Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Delay which does not cause harm is insufficient to state a claim of deliberate medical indifference. Shapley, 766 F.2d at 407 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is not sufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 87, 105-06 (1976)). A prisoner can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

An allegation that prison officials deliberately ignored a prisoner's complaint about the ineffective nature of prescribed pain medication and the pain being suffered as a result can, in some circumstances, give rise to a constitutional claim. See Chess v. Dovey, No. CIV S-07-1767 LKK DAD P., 2011 WL 567375, at *21 (E.D. Cal. Feb. 15, 2011) (denying summary judgment on Eighth Amendment claim where the doctor "ignored plaintiff's complaint about the ineffective nature of the Tylenol, aspirin and other medications he was being given and the pain being suffered as a result"); Franklin v.

Dudley, No. 2:07-cv-2259 FCD KJN P., 2010 WL 5477693, at *6 (E.D. Cal. Dec. 29, 2010) (existence of triable issue of fact as to whether defendant violated Eighth Amendment precluded the granting of summary judgment where plaintiff was previously prescribed narcotic pain medication but now was given only Motrin, Naprosyn, and Tylenol under prison's no-narcotic policy). However, a prisoner does not have a constitutional right to the medication of his choice, and a mere difference of opinion regarding appropriate treatment and pain medication is insufficient to give rise to a constitutional claim. Toguchi, 391 F.3d at 1058; Wilson v. Borg, No. 95-15720, 1995 WL 571481, at *2 (9th Cir. Sept. 27, 1995); Smith v. Norrish, No. 94-16906, 1995 WL 267126, at *1 (9th Cir. May 5, 1995); McMican v. Lewis, No. 94-16676, 1995 WL 247177, at *2 (9th Cir. Apr. 27, 1995).

Plaintiff's allegation of a torn rotator cuff is sufficient to state a serious medical need. Jett, 439 F.3d at 1096 (a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

However, the facts alleged regarding the time period leading up to Plaintiff's surgery do not reflect deliberate indifference. According to Plaintiff, he was prescribed Naproxen and, later, Tylenol #3. He was assigned to a lower bunk and light duty work. He was referred for an MRI and a consultation with an orthopedic surgeon. The surgeon recommended surgery, which Plaintiff received. Thus, Plaintiff was not denied treatment or pain medication. Although he desired to proceed to surgery more quickly, the facts do not suggest that the delay is attributable to any of the defendants, or that they could have scheduled Plaintiff for surgery absent input from the surgeon.

It is clear that Plaintiff would have preferred a different medication than that which he was offered; however, the facts alleged do not suggest that his pre-surgical pain was managed with deliberate indifference. He was prescribed one medication and, when it was insufficient, was given another. He was told that he did not meet the clinical criteria for morphine. Although Defendant Johal allegedly made disparaging remarks regarding Plaintiff's supposed drug-seeking behavior, she nonetheless offered him treatment. Plaintiff's complaints appear to reflect a mere difference of opinion that does not give rise to a constitutional claim. And, although Plaintiff alleges his prescription was "allowed" to expire eight days prior to his surgery, leaving him without medication during this time, there are no facts to suggest that Defendants were aware Plaintiff was without medication or purposefully denied him medication.

Plaintiff raises various allegations regarding the care he received following surgery. Again, he complains of the insufficiency of pain medication. Plaintiff initially was given morphine for pain, then methadone, then at some point Tylenol #3. There was a three day interval between morphine and methadone when Plaintiff was without pain medication. He attributes the denial to Defendants Johal and Zepp; however, he does not state that he saw these Defendants during that interval or otherwise explain how they were involved in denying his medication. He further states that he advised Defendant Zepp on August 10, 2015 that Tylenol #3 was inadequate. He does not describe her response to that request or any reasons given for denying a change in medication. However, Plaintiff also underwent physical therapy on that date. Based on the facts alleged, it is plausible that Defendant Zepp wished to await the results of physical therapy before considering a change in medication. In any event, the facts alleged by Plaintiff are insufficient to allege deliberate indifference to his complaints of pain.

Plaintiff complains that Defendant Johal initially denied him various accommodations following his surgery. However, Johal granted the accommodations upon being advised that Plaintiff was told he was required to perform his regular work.

9

Thus, Johal took action upon being apprised of Plaintiff's circumstances. This does not support a finding of deliberate indifference.

Plaintiff complains that he was denied physical therapy. The the lack of physical therapy as recommended by Plaintiff's surgeon is troubling. However, it is unclear that this deficiency is attributable to any of the Defendants. Dr. Paik recommended therapy on June 17, 2015. On June 24, 2015, the physical therapist at the institution quit, or quit providing treatment to certain patients. Plaintiff eventually underwent therapy on August 10, 2015, only to have subsequent sessions cancelled without explanation. There are no facts to suggest that these circumstances were within the Defendants' control. Plaintiff also contends that Defendant Youssef denied Plaintiff's request for use of a therapy band in his cell. However, Plaintiff presents no facts regarding the information contained in his request or any reasons for its denial. These facts are insufficient to state deliberate indifference.

Lastly, Plaintiff appears to attribute liability to Defendants Klang and Youssef based on their failure to respond to requests for interview and their responses to Plaintiff's administrative appeal. The failure to respond to a request for interview does not, in itself, reflect deliberate indifference. There are no facts to suggest that Defendants Klang and Youssef received these requests. Even if they did, Plaintiff has not stated a viable claim against any defendant for denying him medical care. Absent the presentation of facts sufficient to show that an Eighth Amendment violation occurred in the first place, Plaintiff cannot pursue a claim against those to whom he complained about the alleged denial.

Similarly, Plaintiff's claims regarding the review of his administrative appeal are insufficient to state a claim. As Plaintiff already was advised, denying a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). However, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006). Thus, there may be

limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. Those circumstances are not presented here. Moreover, Defendant Klang referred Plaintiff for an orthopedic consultation with the doctor who eventually recommended and performed Plaintiff's surgery; Klang's denial of Plaintiff's request for referral to a general surgeon therefore does not reflect deliberate indifference but a difference of opinion as to appropriate care. And, although both Klang and Youssef denied Plaintiff's requests for morphine, allegations in that regard fail to state a claim for the reasons already stated.

This is Plaintiff's third attempt to state a cognizable medical indifference claim. He has been advised of the legal standard and pleading deficiencies on two prior occasions. He nonetheless has failed to allege facts to state a cognizable Eighth Amendment claim. Leave to amend should be denied.

**B.     First Amendment Retaliation**

Plaintiff now claims that certain defendants retaliated against him by providing inadequate medical care because Plaintiff filed an administrative grievance.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact

regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

The third prong can be satisfied by various activities. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights litigation similarly is protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

Plaintiff filed a single administrative grievance complaining of care by Johal and Zepp. According to Plaintiff, Johal stated in relation to the administrative appeal that she was denying Plaintiff morphine because he had filed the grievance. At the same time, however, Johal referred Plaintiff for an orthopedic consultation. She also later prescribed him Tylenol #3 and, after his surgery, granted him various accommodations. Likewise, Zepp offered Plaintiff pain medication, although not his preferred medication. This course of conduct does not reflect a retaliatory animus stemming from Plaintiff's grievance. Furthermore, Plaintiff has not alleged facts to suggest that the decision to deny Plaintiff morphine is unsupported by legitimate correctional goals; to the contrary, the facts

presented suggest that the decision was supported by clinical standards applied within the institution.

Plaintiff fails to state a cognizable retaliation claim, and it does not appear he could do so if given leave to amend. Further leave to amend should be denied.

## V. CONCLUSION AND RECOMMENDATION

Plaintiff's second amended complaint does not state a cognizable claim for relief. He previously was advised of pleading deficiencies and afforded the opportunity to correct them. He failed to do so. Any further leave to amend reasonably appears futile and should be denied.

The undersigned recommends that the action be dismissed with prejudice, that dismissal count as a strike pursuant to 28 U.S.C. § 1915(g), and that the Clerk of the Court terminate any and all pending motions and close the case.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: October 31, 2016 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE

13